# EXHIBIT "B"

# GUARANTY

This Guaranty is executed and delivered as of September 26, 2001, by the undersigned, **MADJID EBADI** (jointly and severally if more than one, the "Guarantor") to FLEET NATIONAL BANK, a national banking association created and existing under the laws of the United States of America with an office located at 335 Adams Street, Brooklyn, New York (the "Bank").

WITNESSETH:

WHEREAS, the Bank and **CBC MEDIA REALTY, LLC** (the "Borrower") intend to enter into a loan transaction of even date herewith; and

WHEREAS, the Bank has advised the Guarantor that it will not enter into the aforesaid loan transaction with the Borrower unless, among other matters, the Guarantor guarantees the punctual payment and performance of all obligations of the Borrower to the Bank as hereinafter provided, including without limitation the punctual payment of all principal, interest and fees; and

WHEREAS, the Guarantor is willing and has agreed to guarantee the payment and performance of the aforesaid obligations, as hereinafter provided.

NOW, THEREFORE, in consideration of any and all loans, advances, discounts and extensions of credit made and to be made by the Bank to, for the account of, or on behalf of the Borrower, and for other good and valuable consideration, the receipt of which is hereby acknowledged, the Guarantor agrees as follows:

1. **Definition of Liabilities.** "Liabilities of the Borrower" shall mean all obligations, indebtedness and liability of any type of the Borrower to the Bank, whether now existing or hereafter incurred, whether direct, indirect, absolute or contingent, whether otherwise guaranteed or secured, and howsoever evidenced or acquired, including without limitation all interest rate swap, cap and floor contract obligations of the Borrower (excluding, however, indebtedness incurred primarily for personal, family or household purposes); the obligations of the Borrower under any agreement evidencing any of the foregoing; expenses and costs incurred by the Bank in the enforcement of any of its rights with respect thereto, including without limitation reasonable attorneys' fees; and any and all costs and expenses incurred by the Bank for appraisals, environmental site assessments, and examinations and inspections of both books and records and property including, without limitation, the fees and expenses of all engineers, appraisers and other professionals.
2. **Guaranty of Liabilities.** The Guarantor hereby guarantees to the Bank the full and prompt payment and performances of all Liabilities of the Borrower. The obligations of Guarantor hereunder are primary and not contingent. Notwithstanding the name of this document, reference to the term Guarantor, or any other provision herein to the contrary, Guarantor acknowledges and agrees that this Guaranty is intended to be a contract of suretyship and that the Guarantor has agreed to act as a surety to the Bank.
3. **Guaranty Absolute and Unconditional.** This is a continuing, absolute and unconditional Guaranty which is subject to no limitations except those expressly agreed to by the Guarantor and the Bank in writing. This Guaranty is not conditioned or contingent upon the genuineness, validity, or enforceability of the loan documents or other instruments relating to the creation or performance of the Liabilities of the Borrower or the pursuit by the Bank of any remedies which the Bank has now or may hereafter have with respect thereto under the loan documents at law, in equity, or otherwise. Furthermore, the Guarantor shall forthwith pay all sums due to the Bank hereunder without regard to any counterclaim, setoff, deduction, or defense of any kind which any party obligated under the loan documents may have or assert, and without abatement, suspension, deferment, or reduction on account of any occurrence whatsoever.
4. **Events of Default.** Upon the occurrence of any event of default under any instrument evidencing any of the Liabilities of the Borrower or any of the following events: (a) default in the payment or performance of any other obligations or liabilities of the Guarantor under any other agreement between the Bank and the Guarantor; (b) the Guarantor, if a business entity, discontinues business operations at any of the Guarantor's locations; (c) the Guarantor is generally unable to pay debts as they become due or the Bank deems itself insecure; (d) the Guarantor makes a general assignment for the benefit of creditors; (e) the entry of a decree, order or order for relief by a court having jurisdiction of a case initiated by or against the Guarantor under the federal bankruptcy code or any other federal or state laws pursuant to which a receiver, liquidator, assignee, custodian, trustee, sequestrator, debtor in possession, examiner or other similar official, is appointed for the Guarantor or any of the Guarantor's property, with or without consent, for any purpose whatsoever; (f) a substantial part of the property of the Guarantor is taken by attachment, execution or any other form of legal process; or (g) death of an individual Guarantor or dissolution of a Guarantor that is a business entity; then the liabilities and obligations of the Guarantor hereunder shall immediately become due and payable at the election of the Bank without notice or demand. The Bank shall have no obligation to exercise any right or remedy or to seek any recovery from any party obligated under the loan documents or to realize upon my collateral prior to proceeding hereunder against the Guarantor, and likewise the enforcement of the Bank's rights against the Borrower, any other party to the loan documents, or any collateral, shall not impair the right of the Bank to enforce this Guaranty against the Guarantor. The Guarantor expressly agrees that any such action by the Bank shall never operate as a release or other diminution of the liability of the Guarantor under this Guaranty.
5. **Restrictions on Asset Transfers.** The Guarantor hereby covenants that during such time as this Guaranty is in effect, the Guarantor will not make or permit any substantial diminution in the Guarantor's net worth and will not sell, mortgage or pledge any material portion of the Guarantor's real or personal property for less than fair consideration.
6. **Guarantor's Representations and Warranties.** The Guarantor hereby represents and warrants that: (a) Neither the execution nor performance of this Guaranty will violate any indenture, agreement or other instrument to which the Guarantor is a party, or by which the Guarantor is bound, or be in conflict with, result in a breach of or constitute with due notice or lapse of time or both a default under, or except as may be provided by this Guaranty, result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever upon any of the property or assets of the Guarantor pursuant to any such indenture, agreement or instrument; (b) there is no action suit or proceeding at law or in equity or by or before any governmental instrumentality or other agency now pending or, to the knowledge of the Guarantor, threatened or affecting the Guarantor which, if adversely determined, would have a material adverse effect on the business, operations, properties, assets or condition, financial or otherwise, of the Guarantor, (c) the Guarantor is not party to any agreement or instrument or subject to any restriction adversely affecting the guarantor's business, properties or assets, operations or conditions, financial or otherwise; (d) the Guarantor is not in material

default in the performance, observance or fulfillment of any of the obligations, covenants or conditions contained in any agreement or instrument to which the Guarantor is a party; and (e) if a corporate, partnership, limited liability company or trust Guarantor, it is duly organized, validly existing and in good standing under the laws of the state of its formation and in every other jurisdiction, except where the failure to so qualify would not have a material adverse effect on the Guarantor, its property, its financial condition or otherwise.

7. **Guarantor's Waivers; Waiver of Subrogation.** The Guarantor waives notice of the incurring of Liabilities of the Borrower; the acceptance of this Guaranty by the Bank; presentment and demand for payment, protest, notice of protest, notice of dishonor or non-payment of any instrument evidencing any Liabilities of the Borrower, acceleration, and intent to accelerate; any right to require suit against the Borrower or any other party before enforcing this Guaranty; any right to have security applied before enforcing this Guaranty in any manner; any right to marshaling of assets; the defense of impairment of collateral; and all other suretyship defenses. The Guarantor consents and agrees that renewals and extensions of time of payment, surrender, release, exchange, substitution, dealing with or taking of additional collateral security, taking or release of any guaranties, abstaining from taking advantage of or realizing upon any collateral security or other guaranties and any and all other forbearances or indulgences granted by the Bank to the Borrower or any other party may be made, granted and effected by the Bank without notice to the Guarantor and without in any manner affecting the Guarantor's liability hereunder. Any notice to the Guarantor by the Bank at any time shall not imply that such notice or any further or similar notice was or is required. The Guarantor also hereby waives any claim, right or remedy which the Guarantor may now have or hereafter acquire against the Borrower that arises hereunder and/or from the performance by the Guarantor hereunder including, without limitation, any claim, remedy or right of subrogation, reimbursement, exoneration, contribution, indemnification, or participation in any claim, right or remedy of the Bank against the Borrower or any security which the Bank now has or hereafter acquires, whether or not such claim, right or remedy arises in equity, under contract, by statute, under common law or otherwise.

8. **Setoff Rights.** Borrower and any Guarantor hereby grant to Bank, a lien, security interest and right of setoff as security for all liabilities and obligations to Bank, whether now existing or hereafter arising, upon and against all deposits, credits, collateral and property, now or hereafter in the possession, custody, safekeeping or control of Bank or any entity under the control of FleetBoston Financial Corporation, or in transit to any of them. At any time, without demand or notice, Bank may set off the same or any part thereof and apply the same to any liability or obligation of Borrower and any Guarantor even though unmatured and regardless of the adequacy of any collateral securing the Loan. ANY AND ALL RIGHTS TO REQUIRE BANK TO EXERCISE ITS RIGHTS OR REMEDIES WITH RESPECT TO ANY OTHER COLLATERAL WHICH SECURES THE LOAN, PRIOR TO EXERCISING ITS RIGHT OF SETOFF WITH RESPECT TO SUCH DEPOSITS, CREDITS OR OTHER PROPERTY SETOFF WITH RESPECT TO SUCH DEPOSITS, CREDITS OR OTHER PROPERTY OF THE BORROWER OR ANY GUARANTOR, ARE HEREBY KNOWINGLY, VOLUNTARILY AND IRREVOCABLY WAIVED.

9. **Fees and Expenses.** The Guarantor agrees to pay the Bank any and all costs, expenses and reasonable attorneys' fees (which may include costs allocated by the Bank's internal legal department), paid or incurred by the Bank in administering, enforcing or endeavoring to enforce this Guaranty, including, without limitation, overnight courier fees, lien search fees, and filing and recording fees. The Guarantor hereby grants to the Bank a continuing security interest in all accounts, deposits, and property of the Guarantor, and all proceeds thereof, from time to time with or in the hands of the Bank to secure the liabilities of the Guarantor, and the Bank shall have the same right to setoff with respect to deposits and other credits of the Guarantor as it has with respect to deposits and other credits of the Borrower under any agreements evidencing any of the Liabilities of the Borrower or under any applicable law.

10. **Preference, Etc.** The Guarantor agrees that this Guaranty shall continue to be effective or be reinstated, as the case may be, if at any time payment, or any part thereof, of the principal of, interest on, or fees with respect to any of the Liabilities of the Borrower is rescinded or must otherwise be restored or returned by the Bank upon insolvency, bankruptcy or reorganization of the Borrower or the Guarantor, or otherwise, all as though such payment had not been made.

11. **Choice of Law; Modification; Successors and Assigns.** This Guaranty is executed under and shall be construed in accordance with the local laws (excluding the conflict of laws rules, so-called) of the State of New York (hereinafter the "State"). It may not be amended, modified or waived except by a written instrument describing such amendment, modification or waiver executed by the Guarantor and the Bank. It may not be assigned by the Guarantor. It shall inure to the benefit of the Bank and its successors and assigns and shall bind the Guarantor and the successors, representatives and heirs of the Guarantor.

12. **WAIVER OF JURY TRIAL. THE GUARANTOR HEREBY WAIVES ANY RIGHTS IT MAY HAVE TO A TRIAL BY JURY OF ANY DISPUTE ARISING UNDER OR RELATING TO THIS GUARANTY, AND AGREES THAT ANY SUCH DISPUTE SHALL BE TRIED BEFORE A JUDGE SITTING WITHOUT A JURY.**

13. **Jurisdiction and Venue.** The Guarantor hereby irrevocably consents that any legal action or proceeding against the Guarantor or any of the Guarantor's property with respect to any matter arising under or relating to this Guaranty may be brought in any court of the State, or any Federal Court of the United States of America located in the State, as the Bank may elect, and by execution and delivery of this Guaranty the Guarantor hereby submits to and accepts with regard to any such action or proceeding, for itself and in respect of its property, generally and unconditionally, the jurisdiction of the aforesaid courts. The Guarantor further irrevocably consents to the service of process in any such action or proceeding by the mailing of copies thereof by registered or certified mail, postage prepaid, to the Guarantor at its address set forth herein. The foregoing, however, shall not limit the Bank's rights to serve process in any other manner permitted by law or to bring any legal action or proceeding or to obtain execution of judgment in any other jurisdiction. The Guarantor hereby irrevocably waives any objection which it may now or hereafter have to the laying of the venue of any suit, action or proceeding arising out of or relating to this Guaranty, and hereby further irrevocably waives any claim that the State is not a convenient forum for any such suit, action or proceeding.

14. **Borrower's Discharge.** If for any reason any of the Liabilities of the Borrower have been discharged or have become irrecoverable from the Borrower by operation of law or for any other reason, the liabilities of the Guarantor under this Guaranty shall nevertheless remain in full force and effect notwithstanding such discharge or irrecoverability.

15. **Prospective Termination Only.** This Guaranty shall not be terminated until the Bank is its discretion determines that the Liabilities of the Borrower covered by this Guaranty have been satisfied in full.

16. **Financial Statements; Tax Returns.** During each calendar year that this Guaranty is in effect, the Guarantor agrees to furnish to the Bank on or before one hundred and twenty (120) days after the Guarantor's fiscal year end, the following: in the case of a corporate, limited liability company, partnership or trust Guarantor, financial statements (audited if requested), balance sheets, profit and loss statements, together with supporting schedules, signed and in such form as may be acceptable to the Bank; in the case of an individual Guarantor, signed personal financial statements on a form prescribed by the Bank; in the case of corporate, trust, and individual Guarantors, current Federal income tax returns (with all schedules and exhibits); in the case of a partnership Guarantor, Form 1065 (with all schedules and exhibits); and in the case of a limited liability company Guarantor, the appropriate current Federal income tax return (with all schedules and exhibits). In any event, all the documents referred to in the foregoing sentence must be submitted to the Bank if there occurs a material adverse change in the financial or business condition of the Borrower or the Guarantor or an event of default under this Guaranty.
17. **Notices.** Except as otherwise specifically provided for herein, any notice, demand or communication hereunder shall be given in writing (including facsimile transmission or telex) and mailed or delivered to each party at its address or telecopier number set forth below, or, as to each party, at such other address or telecopier number as shall be designated by such party by a prior notice to the other party in accordance with the terms of this provision. Any notice to the Guarantor shall be sent to the address(es) as referenced below. All notices hereunder shall be effective upon the earliest to occur of (i) five (5) business days after such notice is mailed, by registered or certified mail, postage prepaid (return receipt requested), (ii) upon delivery by hand, (iii) upon delivery if delivered by overnight courier (such delivery to be evidenced by the courier's records), and (iv) in the case of any notice or communication by telex or telecopy, on the date when sent.
18. **Assignments and Participations.** The Guarantor agrees that the Bank shall have the right at all times to sell all or any portion of the Liabilities of the Borrower and all documents and instruments evidencing or pertaining to the Liabilities of the Borrower including this Guaranty, and to grant one or more participations in the Liabilities of the Borrower and in all documents and instruments evidencing or pertaining to the Liabilities of the Borrower including this Guaranty. In connection therewith, the Guarantor hereby irrevocably authorizes the Bank to deliver to each such purchaser, participant and prospective purchaser or participant originals and copies of all loan documents and instruments and this Guaranty and all financial statements and other credit and factual data from time to time in the Bank's possession which relate to the Borrower and/or all guarantors, including the Guarantor. This Guaranty is expressly declared to be transferable and assignable.
19. **Joint and Several Obligations; Gender.** If more than one Guarantor has signed this Guaranty, the obligations of the Guarantor are joint and several. The term "Guarantor" and all pronouns referring thereto as used herein shall be construed in the masculine, feminine, neuter or singular or plural as the context may require.

This Guaranty has been executed by the Guarantor, through its duly authorized representative where required, as of the date above written.

WITNESS: [signature]

[signature]
Name: Madjid Ebadi
Address: 70 Florence Ave
Massapequa NY
11758

**EXHIBIT "C"**

At an IAS part 27 of the Supreme Court held for the County of Suffolk, at the Courthouse thereof, located at 1 Court Street, Riverhead, New York on, 15th of March 2010

PRESENT HON. **HON. RALPH F. COSTELLO**
RALPH F. COSTELLO, JSC

mot seq 005-MG
mot Date 12-15-09
Adj Date 1-12-10

---------------------------------------------------------------------x

LINGS PROPERTIES LLC.,

Plaintiff,

-against-

CBC MEDIA REALTY, LLC, CONCEPTS BY CLINTON, INC. D/B/A CBC MEDIA, THE WEB STATION, INC., MADJIB EBADI, U.S. SMALL BUSINESS ADMINISTRATION, LONG ISLAND DEVELOPMENT CORP., NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE, TRADEWINDS ENVIRONMENTAL RESTORATION, INC.,

Defendants.

---------------------------------------------------------------------x

District 0504
Section 007.00
Block 02.00
Lot 003.00

Lis Pendens Filed 6/5/08

**JUDGMENT OF FORECLOSURE AND SALE**

Index No.: 4830/08

ENTERED: MAR 29 2010
AT: 2:29 pm

On the Summons and Complaint duly filed in this action on March 4, 2008 and Notice of Pendency of Action duly filed in this action on June 5, 2008, and all proceedings thereon, and on reading and filing the affirmation in support of Judgment of Foreclosure and Sale of Brandi P. Klineberg, Esq., associate of Moritt Hock Hamroff & Horowitz LLP affirmed on November 18, 2009, and on reading the affirmation of regularity of Brandi P. Klineberg, Esq., associate of Moritt Hock Hamroff & Horowitz LLP dated September 16, 2008, and showing that each and all of the defendant(s) herein have been duly served within this State with the summons in this action, and on the

affidavits of service heretofore filed in the Office of the Clerk of the County of Suffolk from all of which it appears that more than thirty days have elapsed since each defendant was served; that Defendants CBC Media Realty, LLC ("CBC"), Concepts by Clinton, Inc. d/b/a CBC Media, The Web Station, Inc., and Madjib Ebadi (collectively, the "Defendants") appeared in the action by interposing an answer which Answer was stricken by order of this Court granted on the 27th day of January, 2009, and Defendants United States of America and Trade-Winds Environmental Restoration, Inc., have appeared by notices of appearance; and said defendants have been given notice hereof; and none of the defendants are infants, incompetents or absentees and, since the filing of the notice of pendency of this action, the complaint herein has not been amended so as to make new parties defendant to this action or so as to embrace real property other than that described in the original complaint or so as to extend the plaintiff's claim against the mortgaged premises; and that the complaint herein and due notice of the pendency of this action containing all the particulars required to be stated therein were duly filed in the Office of the Clerk of the County of Suffolk on June 5, 2008, and an Order granting Summary Judgment and Order of Reference having been duly made to compute the amount due to the plaintiff upon the note, mortgage and SWAP Agreement set forth in the complaint and to examine and report whether the mortgaged premises can be sold in parcels, from all of which it appears that this is an action brought to foreclose a mortgage on real property situate in the COUNTY OF SUFFOLK together with interest thereon and the expenditures made by plaintiff, which are now due and payable, as more fully reported by the Referee heretofore appointed herein, and on reading and filing the report of said Referee, by which report, bearing date October 9, 2009, it appears that the sum of

$712,347.32 was due on August 24, 2009, exclusive of counsel fees; and that the mortgaged premises should be sold in one parcel;

On motion of Moritt Hock Hamroff & Horowitz LLP, attorneys for the plaintiff it is

**ORDERED, ADJUDGED AND DECREED** that the said report of the said Referee be, and the same is hereby in all respects ratified and confirmed; and it is

**ORDERED, ADJUDGED AND DECREED** that the mortgaged premises described in the complaint in this action and as hereinafter described, or such part thereof as may be sufficient to discharge the mortgage debt, the expense of the sale and the costs of this action as provided by the Real Property Actions and Proceedings Law be sold at public auction at ~~Smithtown Town Hall, located at 99 Main Street, Smithtown, New York~~ ISLIP TOWN HALL, 655 MAIN STREET, ISLIP, NY 11751 by and under the direction of Robert Cava, Esq. who is hereby appointed Referee for that purpose; that the said Referee give public notice of the time and place of such sale according to law and the practice of this Court in Islip Bulletin and that the plaintiff or any other parties to this action may become the purchaser or purchasers at such sale; that in case the plaintiff shall become the purchaser at the said sale it shall not be required to make any deposit thereon; that said Referee execute to the purchaser or purchasers on such sale a deed of the premises sold; that such Referee on receiving the proceeds of such sale forthwith pay therefrom, in accordance with their priority according to law, the taxes, assessments or water rates which are or may become liens on the premises at the time of sale with such interest or penalties which may have lawfully accrued thereon, to the date of payment deposit, that said Referee then deposit the balance of said proceeds of sale in his own name as Referee in

Bank the Referee's choice of bank and shall thereafter make the following payments and his checks drawn for that purpose shall be paid by the said depositary.

**FIRST.** The statutory fees of said Referee, not to exceed $500.00.

**SECOND.** The expense of the sale and the advertising expenses as shown on the bills presented, and certified by said Referee to be correct, duplicate copies of which shall be left with said depositary.

**THIRD.** Said Referee shall also pay to the plaintiff or plaintiff's attorney the sum of $1980-00 adjudged to the plaintiff for costs and disbursements in this action, with interest thereon from the date hereof, together with an additional allowance of $ 0 hereby awarded to the plaintiff in addition to costs, with interest thereon from the date hereof; and also $712,347.32, the said amount so reported due as aforesaid, together with the interest thereon from August 24, 2009 at the *per diem* rate of $104.56 as provided in said report or so much thereof as the purchase money of the mortgaged premises will pay of the same, together with $26,958 hereby awarded to the plaintiff as reasonable legal fees herein, together with any advances which plaintiff has made for taxes, fire insurance, principal and interest and any other charges due to prior mortgagees, or to maintain the premises pending the consummation of this foreclosure sale, all together with interest thereon pursuant to the mortgage.

**FOURTH.** If such Referee intends to apply for a further allowance for his fees, application shall be made to the Court therefor upon due notice to those parties entitled thereto.

That in case the plaintiff be the purchaser of said mortgaged premises at said sale, or in the event that the rights of the purchaser at said sale and the terms of sale under this judgment shall be assigned to and be acquired by the plaintiff, and a valid assignment thereof filed with said Referee, said Referee shall not require the plaintiff to pay in cash the entire amount bid at said sale, but shall execute and deliver to the plaintiff a deed or deeds of the premises sold upon the payment to said Referee of the amounts specified above in items marked "First" and "Second" and the amounts of the aforesaid taxes, assessments and water rates, and interest or penalties thereon, or in lieu of the payment of said last mentioned amounts, upon filing with said Referee receipts of the proper municipal authorities showing the payment thereof; that the balance of the amount bid, after deducting therefrom the aforesaid amounts paid by the plaintiff for Referee's fees, advertising expenses, and taxes, assessments and water rates, shall be allowed to the plaintiff and applied by said Referee upon the amounts due to the plaintiff as specified above in item marked "Third"; that if after so applying the balance of the amount bid, there shall be a surplus over and above the said amounts due to the plaintiff, the plaintiff shall pay to said Referee, upon delivery to plaintiff of said Referee's deed, the amount of such surplus; that said Referee on receiving said several amounts from plaintiff shall forthwith pay therefrom said taxes, assessments, water rates, and interest or penalties thereon unless the same have already been paid, and shall then deposit the balance.

That said Referee take the receipt of the plaintiff or plaintiff's attorney for the amounts paid as hereinbefore directed in item marked "Third," and file it with his report of sale; that he deposit the surplus monies, if any, with the Suffolk County ~~Clerk~~/Treasurer within five days after the same shall be received and be ascertainable, to

the credit of this action, to be withdrawn only on the order of the Court, signed by a Justice of the Court; that the said Referee make his report of such sale under oath showing the disposition of the proceeds of the sale and accompanied by the vouchers of the person to whom payments were made and file it with the Clerk of the County of Suffolk within thirty days after completing the sale and executing the proper conveyance to the purchaser and that if the proceeds of such sale be insufficient to pay the amount reported due to the plaintiff with interest and costs as aforesaid, the plaintiff shall recover from the defendant(s) CBC Media Realty, LLC ("CBC"), Concepts by Clinton, Inc. d/b/a CBC Media, The Web Station, Inc., and Madjib Ebadi, the whole deficiency or so much thereof as the Court may determine to be just and equitable of the residue of the mortgaged debt remaining unsatisfied after a sale of the mortgaged premises and the application of the proceeds thereof, provided a motion for a deficiency judgment shall be made as prescribed by Section 1371 of the Real Property Actions and Proceedings Law within the time limited therein, and the amount thereof is determined and awarded by an order of this Court as provided for in said section; and it is further

**ORDERED** that the purchaser or purchasers at said sale be let into possession on production or delivery of Referee's deed or deeds;

**AND IT IS FURTHER ORDERED, ADJUDGED AND DECREED,** that each and all of the defendants in this action and all persons claiming under them, or any or either of them, after the filing of such notice of pendency of this action, be and they are hereby forever barred and foreclosed of all right, claim, lien, title, interest and equity of redemption in the said mortgaged premises and each of every part thereof.

**AND IT IS FURTHER ORDERED, ADJUDGED AND DECREED,** that said premises to be sold in one parcel in "as is" physical order and condition, subject to any state of facts that an inspection of the premises would disclose; any state of facts that an accurate survey of the premises would show; any covenants, restrictions, easements and public utility agreements of record, if any; any building and zoning ordinances of the municipality in which the mortgaged premises are located and possible violations of same; any rights of tenants or persons in possession of the subject premises; prior mortgage lien(s) of record, if any, and any advances and arrears thereunder; prior lien(s) of record, if any; any equity of redemption of the UNITED STATES OF AMERICA to redeem the premises within 120 days from date of sale.

A description of the said mortgaged premises hereinbefore mentioned is annexed hereto and made a part hereof. (See SCHEDULE A).

SAID premises being known as and by the street number 140 Hoffman Lane, Hauppauge, New York 11788

**ORDERED, ADJUDGED AND DECREED,** that the plaintiff be granted any further relief to which the Court shall deem the plaintiff to be entitled.

March 15, 2010

GRANTED

MAR 15 2010

Judith A. Pascale
CLERK OF SUFFOLK COUNTY

ENTER:

HON. RALPH F. COSTELLO
JUSTICE, SUPREME COURT

FILED

MAR 29 2010

Judith A. Pascale
CLERK OF SUFFOLK COUNTY

F:\Lings Properties LLC\docs\jmt foreclosure v2.doc

## SCHEDULE A

ALL that certain plot, piece or parcel of land, situate, lying and being in the Incorporated Village of Islandia, Town of Islip, County of Suffolk and State of New York, known and designated as part of Lot No. 112 on a certain map entitled "Map of Tract 16, owned by D.L. Risley, Hauppauge, Long Island, New York" and filed in the Office of the Suffolk County Clerk on 10/7/1897 as Map No. 425, bounded and described as follows:

BEGINNING at a point on the northerly side of Space Court at the extreme westerly end of a curve connecting the northerly side of Space Court with the westerly side of Hoffman Lane;

RUNNING THENCE North 88 degrees 39 minutes 40 seconds West along the northerly side of Space Court, 217.60 feet;

THENCE North 01 degree 20 minutes 20 seconds East, 246 feet to the division line between Lot Nos. 112 and 111 on said map;

THENCE South 88 degrees 39 minutes 40 seconds East along said line, 242.60 feet to the westerly side of Hoffman Lane;

THENCE South 01 degree 20 minutes 20 seconds West along the westerly side of Hoffman Lane, 221 feet to the northerly end of the above mentioned curve;

THENCE southwesterly along the arc of a curve bearing to the right having a radius of 25 feet, a distance of 39.27 feet to the northerly side of Space Court at the point or place of BEGINNING.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK
-----------------------------------------------------------X

Index No. 08/4830

LINGS PROPERTIES LLC,

Plaintiff,

-against-

CBC MEDIA REALTY, LLC, CONCEPTS BY CLINTON, INC. D/B/A CBC MEDIA, THE WEB STATION, INC. MADJIB EBADI, U.S. SMALL BUSINESS ADMINISTRATION, LONG ISLAND DEVELOPMENT CORP., NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE, TRADEWINDS ENVIRONMENTAL RESTORATION, INC.,

Defendants.
-----------------------------------------------------------X

**VERIFIED BILL OF COSTS**

| | | |
|---|---|---|
| Costs by Statute (CPLR §8201(1),(3)): | ~~$ 500.00~~ | $400.00 |
| TOTAL COSTS | $ 500.00 | |

**DISBURSEMENTS**

| | |
|---|---|
| Foreclosure Search | $ 525.00 |
| Fee for index number CPLR 8018(a), 8301 (a)(12) | $ 210.00 |
| Notice of Pendency | $ 50.00 |
| Serving copy summons & complaint CPLR 8011 (c)1; 8301(d) | $ 515.00 |
| Request for Judicial Intervention | $ 95.00 |
| Motion Fees | $ 135.00 |
| Referee's Fee to Compute (CPLR §8003 (b), CPLR §8301(a)(1)) | $ 50.00 |
| Referee's Fee to Sell | $ 500.00 |



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK
--------------------------------------------------------------X

LINGS PROPERTIES LLC,

Plaintiff,

-against-

CBC MEDIA REALTY, LLC, CONCEPTS BY CLINTON, INC. D/B/A CBC MEDIA, THE WEB STATION, INC. MADJIB EBADI, U.S. SMALL BUSINESS ADMINISTRATION, LONG ISLAND DEVELOPMENT CORP., NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE, TRADEWINDS ENVIRONMENTAL RESTORATION, INC.,

Defendants.
--------------------------------------------------------------X

Index No. 08/4830

**NOTICE OF SALE**

Pursuant to a Judgment of Foreclosure and Sale duly dated March 15, 2010, I, Robert Cava, Esq., the Referee will sell at public auction at the Islip Town Hall, 655 Main Street, Islip, New York 11751 on May 14, 2010 at 11:00 a.m., the premises known as 140 Hoffman Lane, Hauppauge, New York 11788.

Said property being: All that certain plot, piece or parcel of land, situate, lying and being in the Incorporated Village of Islandia, Town of Islip, County of Suffolk and State of New York, known and designated as Lot No. 112 on a certain Map entitled "Map of Tract 16" bounded and described as follows:

BEGINNING at a point on the northerly side of Space Court at the extreme westerly end of a curve connecting the northerly side of Space Court with the westerly side of Hoffman Lane;

RUNNING THENCE North 88 degrees 39 minutes 40 seconds West along the northerly side of Space Court, 217.60 feet;

THENCE North 01 degree 20 minutes 20 seconds East 246 feet to the division line between Lot Nos. 112 and 111 on said map;

THENCE South 88 degrees 39 minutes 40 seconds east along said line, 242.60 feet to the

westerly side of Hoffman Lane;

THENCE South 01 degree 20 minutes 20 seconds West along the westerly side of Hoffman Lane, 221 feet to the northerly end of the above mentioned curve;

THENCE southwesterly along the arc of a curve bearing to the right having a radius of 25 feet, a distance of 39.27 feet to the northerly side of Space Court at the point or place of BEGINNING

Approximate amount of judgment is $712,347.32 plus interest. Sold subject to terms and conditions of filed Judgment and Terms of Sale.

Robert Cava, Esq. Referee, Moritt Hock Hamroff & Horowitz, LLP, 400 Garden City Plaza, Garden City, New York 11530 (516) 873-2000.