UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
In re:

Madjid Ebadi,                                              Case No. 10-73702-ast
                                                           Chapter 13
                      Debtor.
---------------------------------------------------------X

## MEMORANDUM OPINION VACATING FORECLOSURE SALE AS VIOLATING THE AUTOMATIC STAY AND AWARDING ACTUAL DAMAGES TO DEBTOR

### Issues Before the Court and Summary of Ruling

Pending before the Court is a motion (the "Motion") filed by Debtor, Madjid Ebadi ("Ebadi" or "Debtor,"), that seeks to reopen Debtor's bankruptcy case under Section 350(b) of the Bankruptcy Code,[1] in order to have this Court vacate a foreclosure sale (the "Foreclosure Sale") of certain real property (the "Property")[2] conducted by Lings Property, LLC ("LP" or "Respondent"). [dkt item 22] The Motion also seeks an award of actual and punitive damages for LP's alleged willful violation of the automatic stay, pursuant to Section 362(k)(1) of the Code. 11 U.S.C. § 362(k)(1).

On November 2, 2010, the Court held a hearing on the Motion, at which Debtor's counsel and counsel for LP appeared. The parties agreed that there was no dispute regarding the material facts in the case. Those material facts include the following: (1) Debtor did not hold title to the Property and had no ownership interest in the Property at the time of the Foreclosure Sale;[3] (2)

---

[1] References to the "Bankruptcy Code" or the "Code" are to Title 11 of the United States Code, 11 U.S.C. § 101 *et seq*.
[2] The Property is commercial property located at 140 Hoffman Lane, Hauppauge, New York 11788.
[3] In a number of oral and written submissions, Debtor concedes that he had no ownership interest in the Property at the time, and that the argument for finding a stay violation is not based on such an interest. Despite that, Debtor's submissions continue to mention an ownership interest held by Debtor that is a basis for finding a stay violation.

1

prior to the Petition Date (defined *infra*), Debtor was a guarantor of the debt owed to LP; (3) Debtor had been named as a defendant in a state court foreclosure action and in a judgment under which auspices the Foreclosure Sale was ultimately conducted; (4) the Foreclosure Sale was conducted after this case was commenced; and (5) LP knew of the existence of this bankruptcy case when it conducted the Foreclosure Sale, yet did not seek stay relief prior to conducting the Foreclosure Sale.  Based upon these undisputed facts, this Court found cause existed to reopen this case for the limited purpose of determining whether the automatic stay was violated and, if so, what further relief should be granted.  On November 3, 2010, this Court entered an order reopening this case, and establishing deadlines for supplemental submissions. [dkt item 30]  After an extension of time stipulated to by the parties, the parties timely filed their respective affirmations. [dkt items 35-38]  The matter is before the Court on submission.

      This Court must decide: (1) whether LP's conducting the Foreclosure Sale violated the automatic stay; (2) if so, whether the sale should be vacated; and (3) if the stay was violated, whether damages should be awarded.  For the reasons set forth herein, the Court finds that LP knowingly violated the automatic stay, vacates the Foreclosure Sale, and awards actual damages against LP, to be determined as set forth below.  Under the unique facts of this case, however, the Court declines to award punitive damages for LP's knowing violation of the automatic stay.

---

*Compare* Debtor Affirmation in Reply [dkt item 25 ¶ 6] ("The Debtor is not claiming a title ownership interest in the Realty.") *with* Debtor Affirmation in Reply [dkt item 25 ¶ 9]("[H]ere the Debtor is merely seeking to enforce the stay based on his own personal interest in the foreclosed Realty.").  However, Debtor's attorney made more specific statements, both written and oral, conceding that Debtor had no ownership interest in the Property, and at no point did Debtor provide a basis for claiming such an ownership interest; therefore, the Court treats this Motion as an argument for finding a stay violation despite Debtor having no ownership interest in the Property.

**Jurisdiction**

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (G), and (O), and 1334(b), and the Standing Order of Reference in effect in the Eastern District of New York.

**Facts and Background**

The following facts are undisputed.

As of May 14, 2010, the petition date herein (the "Petition Date"), Debtor was the owner of CBC Media Realty ("CBC").  CBC was at all relevant times the owner of the abovementioned Property.

On or about September 26, 2001, CBC executed a Note in favor of Fleet National Bank ("Fleet Bank") for repayment of a loan in the amount of $644,500.00 (the "Note").  As security for repayment of the Note, CBC executed, *inter alia*, a Mortgage and Security Agreement pledging the Property as collateral (the "Mortgage").  Also on September 26, 2001, Debtor executed a Guaranty, under which he personally guaranteed payments of all amounts due under the Note, and performance of all terms and conditions of the Mortgage. [dkt item 22-2, Exh. B]

CBC subsequently defaulted under the Note and Mortgage.  On March 4, 2008, Bank of America, N.A. ("BoA"), as successor by merger to Fleet Bank, filed a foreclosure action in the Supreme Court of the State of New York, Suffolk County (the "State Court"), against, *inter alia*, CBC and Ebadi (the "Foreclosure Action"). [dkt item 22-1]  BoA claimed $567,319.32 was due and owing under the Note as of January 3, 2008. [Verified Complaint, dkt item 22-1 ¶ 43]

On March 29, 2010, the State Court entered a Judgment of Foreclosure and Sale (the "Foreclosure Judgment") in favor of LP.[4] [dkt item 22-2, Exh. C]  The Foreclosure Judgment provided for the appointment of a foreclosure referee (the "Referee")[5], and set May 14, 2010, 11:00 a.m., as the date and time for the Foreclosure Sale. [dkt item 22-2, Exh. C]  The Foreclosure Judgment included a determination that, if the proceeds of the sale were insufficient to satisfy the entire debt owed to LP, including costs and interest, "the plaintiff shall recover from defendants(s) CBC Media Realty, LLC . . . and Madjib Ebadi, the whole deficiency . . . provided a motion for a deficiency judgment shall be made . . . ." [dkt item 22-2, Exh. C]

On May 14, 2010, mere hours before the Foreclosure Sale was scheduled to be held, Ebadi filed this bankruptcy case under Chapter 13 of the Bankruptcy Code. [dkt item 1]  Debtor notified LP's attorneys of this bankruptcy filing by facsimile, the transmission of which was confirmed as received by LP's attorneys.  Debtor similarly notified the Referee of the bankruptcy filing.  Nevertheless, LP, through the Referee, proceeded with the Foreclosure Sale on May 14.  The sale resulted in LP acquiring the rights to the Property; however, the parties did not apprise the Court of the high bid amount.

After filing this case, Debtor failed to comply with many of the requirements imposed on him as a chapter 13 debtor, which failures continued.  On June 29, 2010, despite having received notices of his filing responsibilities and the effects of his uncured failures to comply, the

---

[4] The Foreclosure Action was commenced by BoA, yet the Foreclosure Judgment was granted in favor of LP. [*Compare* dkt item 22-1 *with* dkt item 22-2, Exh. C]  The parties do not detail the chain of events that led to this change in the identity of the parties.  The Court need not reach this issue, nor does this discrepancy affect this Court's rulings, as the Motion relates to LP's foreclosure sale, conducted pursuant to a Foreclosure Judgment, which was issued in favor of LP.

[5] *See* N.Y. REAL PROP. ACTS. LAW § 1351(1) (McKinney) ("The judgment shall direct that the mortgaged premises . . . be sold by or under the direction of the sheriff of the county, or a referee."); N.Y. C.P.L.R. 5103 (McKinney) ("Where a judgment or order directs that real property shall be sold, it shall be sold in such manner as the judgment or order may direct in the county where it is situated by the sheriff of that county or by a referee appointed by the court for the purpose.").

4

bankruptcy case was automatically dismissed under Section 521(i)(1) of the Bankruptcy Code. [dkt item 17]; 11 U.S.C. § 521(i)(1). On July 14, 2010, the bankruptcy case was closed.

On August 24, 2010, CBC was served by attorneys for LP with a ten-day Notice to Quit the Premises, seeking eviction of CBC from the Property.

On September 8, 2010, Debtor filed this Motion. [dkt item 22] He argued that this case should be reopened pursuant to Section 350(b) of the Bankruptcy Code, the Foreclosure Sale should be vacated as violative of the automatic stay of Section 362(a) of the Bankruptcy Code, and actual and punitive damages should be awarded for LP's willful violation of the stay, pursuant to Section 362(k)(1) of the Code. [dkt item 22]; 11 U.S.C. §§ 350(b), 362(a),(k)(1).

As noted, on November 2, 2010, this Court held a hearing at which Debtor's and LP's attorneys appeared. LP conceded that it knew that this bankruptcy case had been filed prior to the Foreclosure Sale. Debtor essentially conceded that this case was not filed with an intent to obtain confirmation of a chapter 13 plan and a discharge, as evidenced by his failure to comply with the most basic filing requirements under Section 521 of the Code. *See* 11 U.S.C. § 521. Debtor also conceded he was not interested in having the case reopened to file, and seek confirmation of, a plan. As noted, this Court granted that part of the Motion seeking to reopen this case and set a supplemental submission deadline. [dkt item 30]

## Discussion

Subject to a number of specific exceptions not applicable here, filing a voluntary bankruptcy petition operates as an automatic stay applicable against all persons and entities, prohibiting, *inter alia*, the continuation of judicial proceedings against the debtor and property of the estate. 11 U.S.C. § 362(a). In the Second Circuit, actions taken in violation of the automatic stay are generally void *ab initio*. *See generally Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d

5

522, 527 (2d Cir. 1994) (citing *48th St. Steakhouse, Inc. v. Rockefeller Grp., Inc. (In re 48th St. Steakhouse, Inc.),* 835 F.2d 427, 431 (2d Cir. 1987)).  Further, an individual debtor injured by a willful violation of the stay can recover actual damages, and in certain circumstances, punitive damages.  *See* 11 U.S.C. § 362(k)(1).

This case presents an issue of first impression in the Second Circuit: whether a foreclosure sale under New York law of real property in which a bankruptcy debtor has no ownership interest is a violation of the automatic stay, where the debtor is a guarantor of the underlying debt and a named defendant in a foreclosure judgment.  The Court finds that such a foreclosure sale does violate the automatic stay.

In the present case, the automatic stay was in effect on May 14, 2010, prior to the Foreclosure Sale.  Although Debtor did not personally hold an ownership interest in the Property sold, LP nonetheless violated the stay by conducting the Foreclosure Sale.  The Foreclosure Sale is therefore void, and LP is liable for actual damages.  However, even though LP knew that this case had been filed, and is therefore charged with knowing that the automatic stay was in effect, this Court does not conclude that LP acted with maliciousness or that bad faith was shown. Therefore, LP is not liable for punitive damages.  Further, this Court is concerned with awarding punitive damages to a debtor who clearly did not file this case with the honest intention of reorganizing his financial affairs or with the desire to obtain a discharge.

### *LP Violated the Automatic Stay*

Section 362(a) of the Bankruptcy Code provides:

> [A] petition filed under . . . this title . . . operates as a stay, applicable to all entities, of—
> (1) the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of

> the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
> . . .
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title . . . .

11 U.S.C. § 362(a).

LP asserts that it did not violate the stay because the Property was owned by CBC and not by Debtor. [LP Affirmation in Opposition, dkt item 24 ¶¶ 4-10] While it is true that CBC was the owner of the Property, the stay violation at issue here is not based upon Debtor having an ownership interest in the Property but, rather, on Debtor's being a named defendant in the Foreclosure Action and in the Foreclosure Judgment, which arose from Debtor's status as a guarantor of the debt owed by CBC to LP.

Prior to the time Debtor commenced this case, LP had already obtained a Foreclosure Judgment in which Debtor was a named defendant. LP continued the Foreclosure Action by conducting the Foreclosure Sale. This constitutes both a continuation of a judicial action against the debtor and a continuation of a judicial action to recover a claim against the debtor, both violations of the plain language of Section 362(a)(1) of the Code. *See* 11 U.S.C. § 362(a)(1).

In addition, the Foreclosure Judgment specifically provides that if the proceeds from the Foreclosure Sale are insufficient to pay the full amounts due to LP, LP shall recover the deficiency from Debtor, provided it makes the appropriate motion. The Foreclosure Sale could have, therefore, satisfied the prerequisite condition for collecting a deficiency. Although the

Foreclosure Sale was not the final step required in order to obtain a deficiency judgment, it was a significant step in a process that could lead to recovery of a deficiency judgment against Debtor.[6]

The Foreclosure Sale also fixed, at least to some extent, the costs related to the sale, which costs could ultimately have been collected from Debtor as part of the deficiency, in accordance with the Foreclosure Judgment.

Under New York law, in order to collect a deficiency judgment, a mortgagee must prove the fair and reasonable market value of the mortgaged premises. N.Y. REAL PROP. ACTS. LAW § 1371(2) (McKinney); 79 N.Y. JUR. 2D MORTGAGES § 806 (Updated 2011). A court determining the fair market value of mortgaged property can take a variety of factors into consideration, including the price actually obtained at the foreclosure sale. 79 N.Y. JUR. 2D MORTGAGES § 809 (Updated 2011) ("The court should receive evidence of the age and construction of the buildings on the premises, the rent received therefor, assessed value, location, condition of repair, and sale price of property of a similar nature in the neighborhood, conditions in the neighborhood which affect the value of property therein, accessibility, and all other elements which may be fairly considered as affecting the market value of real property in a given neighborhood." (quoting *Heiman v. Bishop*, 4 N.E.2d 944, 946 (N.Y. 1936))). *But cf.* 79 N.Y. JUR. 2D MORTGAGES § 810 (Updated 2011) (noting while foreclosure in an ordinary market furnishes some criterion of the value of the realty, an emergency foreclosure with no bidders other than a plaintiff is not a true criterion of value (citing *Central N.Y. Mortg. & Title Co. v. Williams*, 279 N.Y.S. 451 (N.Y. Sup. Ct. 1935))).

---

[6] The record does not indicate whether, in actuality, the Foreclosure Sale generated sufficient funds to cover all amounts due, or whether LP moved, or intends to move, for the imposition of a deficiency judgment. These facts, however, do not alter the Court's analysis of the statute and the ultimate holding herein.

A foreclosure sale also sets the date as of which the fair market value of the property is determined, if a deficiency is later sought. 79 N.Y. JUR. 2D MORTGAGES § 808 (Updated 2011)) ("[T]he court must determine the fair and reasonable market value of the mortgaged premises as of the date such premises were bid in at auction or such nearest earlier date as there shall have been any market value thereof." (citing N.Y. REAL PROP. ACTS. LAW § 1371(2) (McKinney))).

Because the Foreclosure Sale is a substantial step in a process that could lead to recovery of a deficiency judgment from Debtor, it falls within the contours of "any act to collect, assess,[7] or recover a claim against the debtor," which is prohibited by the automatic stay under Section 362(a)(6) of the Code.[8] 11 U.S.C. § 362(a)(6).[9]

It is a well established principle of bankruptcy law that a creditor is generally not barred from pursuing collection of a debt from a non-filing co-obligor or guarantor, even if one of the

---

[7] The Court does not reach the issue of whether the Foreclosure Sale is itself an assessment of a future claim against Debtor. *See In re Nw. Automatic Prods., Inc.*, Nos. 4-86-2366, 4-86-2365, 1989 WL 4477, at *2 (Bankr. D. Minn. Jan. 23, 1989) ("When considering that assess is used in conjunction with 'collect' and 'recover', the statute's use of assess is similar to the meaning of levy. The automatic stay prohibits levying of liabilities or extraction of assets, however § 362(a)(6) cannot interfere with the calculation of debts owed, preparation of offers of proof, or the issuance of a notice of tax liability." (citing *In re Fasgo, Inc.*, Civ. A. No. 86-1995, 1986 WL 10817 (E.D. Pa. Sept. 30, 1986))).

[8] Though a stated purpose for the enactment of Section 362(a)(6) is to prevent claimants from harassing a debtor with collection efforts, that does not bar a finding of a stay violation under the plain meaning of that section, absent harassment or even contact with the debtor. *See* S. REP. NO. 95-989, at 50-51 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5836-37 ("Paragraph (6) prevents creditors from attempting in any way to collect a prepetition debt. Creditors in consumer cases occasionally telephone debtors to encourage repayment in spite of bankruptcy. Inexperienced, frightened, or ill-counseled debtors may succumb to suggestions to repay notwithstanding their bankruptcy. This provision prevents evasion of the purpose of the bankruptcy laws by sophisticated creditors."); H.R. REP. NO. 95-595, at 342 (1978) (same); *Demel v. Group Benefits Plan for Employees of N. Telecom, Inc.*, No. 07 CV 00189(GBD), 2010 WL 167947, at *2 (S.D.N.Y. Jan. 8, 2010) (citing *Matthews v. Rosene (In re Matthews)*, 739 F.2d 249, 251 (7th Cir. 1984)).

[9] Admittedly, not every act that can be a step in a chain that eventually might lead to collection of a prepetition debt from a debtor is a stay violation under Section 362(a)(6) of the Code. 11 U.S.C. § 362(a)(6); *see also Smith v. Conn. Student Loan Found. (In re Smith)*, 14 B.R. 956, 957 (Bankr. D. Conn. 1981) ("The plaintiff argues that any act whatsoever which is related to the collection of a prepetition debt violates the stay. If that were the case, the mere filing of a proof of claim could be challenged."). The Court does not, and need not, define a test for determining whether a given act is a sufficiently significant or substantial step towards collecting a prepetition claim against a debtor so as to violate the automatic stay under Section 362(a)(6). 11 U.S.C. § 362(a)(6). The Court merely finds that based on the above analysis of the present Foreclosure Sale in the context of the Foreclosure Judgment which included a deficiency provision specifically against Debtor, the instant Foreclosure Sale was significant enough to constitute an act to collect, in violation of Section 362(a)(6). 11 U.S.C. § 362(a)(6).

obligors, or the principal obligor, is a debtor in bankruptcy and is therefore shielded from collection efforts by the automatic stay.[10] *See Lynch v. Johns-Manville Sales Corp.*, 710 F.2d 1194, 1196 (6th Cir. 1983) ("It is universally acknowledged that an automatic stay of proceeding accorded by § 362 may not be invoked by entities such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the Chapter 11 debtor."); *Uto v. Job Site Servs., Inc.*, No. CV 10-0529 SJF ETB, 2011 WL 446738, at *1 (E.D.N.Y. Feb. 9, 2011) (citing *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287 (2d Cir. 2003)); 3 COLLIER ON BANKRUPTCY 362.03[8][b] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2011) ("Section 362(a)(6) stays collection from the debtor. It does not stay actions against sureties to recover property in which the debtor has no interest." (citing *Advanced Ribbons & Office Prods., Inc. v. U.S. Interstate Distrib., Inc. (In re Advanced Ribbons & Office Prods., Inc.)*, 125 B.R. 259, 264 & n.8 (B.A.P. 9th Cir. 1991) and *Smith v. Conn. Student Loan Found. (In re Smith)*, 14 B.R. at 957-58)).

Though at first glance the circumstances in the present case may seem sufficiently analogous to collecting a debt from a non-filing obligor so as to not deem LP's Foreclosure Sale of the Property a stay violation, this case is distinguishable, and the Foreclosure Sale is indeed a stay violation. The stay violation in this case is predicated on LP's actions taken in furtherance of the Foreclosure Judgment against, *inter alia*, Debtor himself. Had LP dismissed Debtor from the Foreclosure Action and removed Debtor from the Foreclosure Judgment prior to the sale going forward, the case would likely have been sufficiently analogous to collecting from a non-

---

[10] One notable exception to this principle is the bar on collection of consumer debts, under certain circumstances, in a Chapter 13, but that exception is not applicable in the present case. 11 U.S.C. § 1301.

filing co-obligor such that LP would likely not have been stayed from collecting from CBC.[11] That is not the case here, though. Here, LP pursued a Foreclosure Judgment against Debtor while Debtor was protected by the automatic stay.

In a letter from LP's attorney to Debtor's attorney dated August 24, 2010, LP stated that because Debtor's bankruptcy was dismissed for lack of compliance with Debtor's obligations under the Code, the foreclosure sale should not be voided. [dkt item 22-3, Exh. I] Several issues are implicated by that basic statement, but none is sufficiently availing to overcome LP's violation of the automatic stay. The Court will address a number of these issues briefly.

The fact that the bankruptcy case was dismissed does not render the stay violation moot. As this Court has recently stated, in the Second Circuit, an action in violation of the automatic stay is void *ab initio*. *See In re Olejnik*, No. 09-76714-AST, 2010 WL 4366183, at *5 (Bankr. E.D.N.Y. Oct. 28, 2010); *see also E. Refractories Co. v. Forty Eight Insulations Inc.*, 157 F.3d 169, 172-73 (2d Cir. 1998); *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 527 (2d Cir. 1994) (citing *48th St. Steakhouse, Inc. v. Rockefeller Grp., Inc. (In re 48th St. Steakhouse, Inc.),* 835 F.2d 427, 431 (2d Cir. 1987)) ("[A]ny proceedings or actions described in section 362(a)(1) are void and without vitality if they occur after the automatic stay takes effect."); *In re MarketXT Holdings Corp.*, No. 04-12078 (ALG), 2009 WL 2957809, at *3 & n.3 (Bankr. S.D.N.Y. July 20, 2009) (noting split among circuits, stating "the Second Circuit adheres to the view that stay violations are void"); *In re WorldCom, Inc.*, 325 B.R. 511, 519 (Bankr. S.D.N.Y. 2005) ("When an action has been commenced in violation of the stay, that action can only be made legitimate

---

[11] Though note, in certain circumstances the automatic stay does extend to non-bankruptcy co-obligors. *See* 11 U.S.C. § 1301; *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287-88 (2d Cir. 2003) ("The automatic stay can apply to non-debtors, but normally does so only when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate. Examples are a claim to establish an obligation of which the debtor is a guarantor, *McCartney v. Integra Nat'l Bank North,* 106 F.3d 506, 510-11 (3d Cir.1997) . . . .").

filing co-obligor such that LP would likely not have been stayed from collecting from CBC.[11] That is not the case here, though. Here, LP pursued a Foreclosure Judgment against Debtor while Debtor was protected by the automatic stay.

In a letter from LP's attorney to Debtor's attorney dated August 24, 2010, LP stated that because Debtor's bankruptcy was dismissed for lack of compliance with Debtor's obligations under the Code, the foreclosure sale should not be voided. [dkt item 22-3, Exh. I] Several issues are implicated by that basic statement, but none is sufficiently availing to overcome LP's violation of the automatic stay. The Court will address a number of these issues briefly.

The fact that the bankruptcy case was dismissed does not render the stay violation moot. As this Court has recently stated, in the Second Circuit, an action in violation of the automatic stay is void *ab initio*. *See In re Olejnik*, No. 09-76714-AST, 2010 WL 4366183, at *5 (Bankr. E.D.N.Y. Oct. 28, 2010); *see also E. Refractories Co. v. Forty Eight Insulations Inc.*, 157 F.3d 169, 172-73 (2d Cir. 1998); *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 527 (2d Cir. 1994) (citing *48th St. Steakhouse, Inc. v. Rockefeller Grp., Inc. (In re 48th St. Steakhouse, Inc.),* 835 F.2d 427, 431 (2d Cir. 1987)) ("[A]ny proceedings or actions described in section 362(a)(1) are void and without vitality if they occur after the automatic stay takes effect."); *In re MarketXT Holdings Corp.*, No. 04-12078 (ALG), 2009 WL 2957809, at *3 & n.3 (Bankr. S.D.N.Y. July 20, 2009) (noting split among circuits, stating "the Second Circuit adheres to the view that stay violations are void"); *In re WorldCom, Inc.*, 325 B.R. 511, 519 (Bankr. S.D.N.Y. 2005) ("When an action has been commenced in violation of the stay, that action can only be made legitimate

---

[11] Though note, in certain circumstances the automatic stay does extend to non-bankruptcy co-obligors. *See* 11 U.S.C. § 1301; *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287-88 (2d Cir. 2003) ("The automatic stay can apply to non-debtors, but normally does so only when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate. Examples are a claim to establish an obligation of which the debtor is a guarantor, *McCartney v. Integra Nat'l Bank North,* 106 F.3d 506, 510-11 (3d Cir.1997) . . . .").

by an order retroactively validating the action." (citing *In re Enron Corp.*, 306 B.R. 465, 477 (Bankr. S.D.N.Y. 2004)). *Contra Dott v. Metz*, No. CV 96-5462(RJD), 1998 WL 427555, at *1-2 (E.D.N.Y. Jan. 21, 1998) (addressing question whether actions in violation of stay are void or voidable in Second Circuit, concluding they are merely voidable). Although in appropriate circumstances stay violations can be cured *nunc pro tunc*, absent being cured by a court of competent jurisdiction, a foreclosure sale conducted in violation of the automatic stay is void *ab initio* and can be unwound in order to grant relief to the party injured by the stay violation. This motion is not, therefore, moot.

The fact that this bankruptcy case was dismissed for Debtor's lack of compliance with the Bankruptcy Code's filing requirements similarly has little effect on the ultimate determination of whether the stay was in effect at the time of the act at issue. With limited exceptions not applicable here, e.g. Section 362(c)(4) of the Code, a stay of collection actions is automatically in effect upon filing a bankruptcy petition, regardless of whether the debtor subsequently complies with his obligations as a debtor, or whether the case is ultimately dismissed. While a debtor's later conduct may be considered in determining whether to retroactively grant relief from the stay, or in assessing stay violation damages, it does not, on its face, alter the fact that the stay is automatically in effect as of the time the bankruptcy petition is filed.

### *The Foreclosure Action Was Not Merely an Action* **in rem**

Under New York law, a foreclosure action can be maintained *in rem*, seeking determinations relating to title alone, or *in personam*, seeking general recovery against individuals or other entities. *FDIC v. Four Star Holding Co.*, 178 F.3d 97, 102 (2d Cir. 1999) (citing *Bowery Sav. Bank v. Meadowdale Co.*, 64 N.Y.S.2d 22, 23 (N.Y. Sup. Ct. Sp. Term 1942)); 78 N.Y. JUR. 2D MORTGAGES § 509 (Updated 2011) ("An action to foreclose a mortgage

12

is an action in equity and is an in rem proceeding." (citing *Reichert v. Stilwell*, 64 N.E. 790 (N.Y. 1902))). The fact that a foreclosure action can be an action *in rem* does not mean, however, that a given foreclosure action is indeed solely *in rem*, and, in fact, many foreclosure actions in New York are not merely *in rem* actions. *In re Ganet Realty Corp.*, 9 F. Supp. 246, 247 (S.D.N.Y. 1935) ("Since [the enactment of the Revised Statutes of 1828] a foreclosure suit in New York is ordinarily both in rem and in personam—in rem for the purpose of realizing on the lien, in personam to obtain personal judgment for any deficiency against the mortgagor and others individually liable for the debt.").

The Foreclosure Action at issue in the present case in fact was not merely an action *in rem* but rather combined the *in rem* foreclosure request with an *in personam* action against CBC, Debtor, and others. Stated otherwise, LP did not merely seek to determine title to a parcel of land owned by CBC, but rather sought, and indeed obtained, a judgment against various entities, ultimately allowing LP to seek a deficiency judgment if the sale proceeds were insufficient to pay the debt secured by the Property.

An *in rem* action against property in which a debtor does not have an ownership interest would likely not run afoul with the automatic stay. *See St. Clair v. Beneficial Mortg. Co. (In re St. Clair)*, 251 B.R. 660 (D.N.J. 2000) (holding that enforcing a foreclosure action, which under New Jersey law was purely *quasi in rem*, on property in which debtor already had no proprietary interest was not stayed by Section 362(a)). As noted above, such an action would likely be governed by the principle that a creditor can generally pursue non-bankrupt obligors freely. An action that is at least partially *in personam* against a debtor, on the other hand, is stayed by the Bankruptcy Code, and continuing such an action constitutes a violation of the automatic stay. 11 U.S.C. § 362(a).

13

LP argues that under New York law, a plaintiff seeking foreclosure is required to include an *in personam* claim against potential deficiency debtors or the deficiency will be deemed abandoned. This Court agrees that such is generally the law in New York. *See* N.Y. REAL PROP. ACTS. LAW §§ 1301, 1371 (McKinney); 78 N.Y. JUR. 2D MORTGAGES § 437 (Updated 2011). However, the fact that LP had to institute an *in personam* action against Debtor to preserve its right to seek a deficiency judgment does not change the fact that LP continued a prepetition *in personam* action against Debtor postpetition, in violation of the automatic stay. LP should have sought and obtained stay relief from this Court, or removed Debtor from the action, prior to continuing the *in personam* Foreclosure Action, regardless of whether New York law required LP to originally commence an *in personam* action against Debtor.

### *The Foreclosure Sale Must Be Vacated*

As noted above, in the Second Circuit, an action taken in contravention of the automatic stay is void *ab initio*. *See generally Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 527 (2d Cir. 1994) (citing *48th St. Steakhouse, Inc. v. Rockefeller Grp., Inc. (In re 48th St. Steakhouse, Inc.),* 835 F.2d at 431). This is true even if the violation were done unknowingly. Here, LP does not dispute that it had notice of the pending bankruptcy case prior to the sale.

Under certain circumstances, a bankruptcy court will grant relief from the stay, such as by terminating, annulling, modifying, or conditioning the stay. 11 U.S.C. § 362(d). Generally, annulment of the stay retroactively validates actions taken in contravention of such stay, whereas termination, modification, and conditioning generally take effect only as of the date such relief is granted. *E. Refractories Co. v. Forty Eight Insulations Inc.*, 157 F.3d at 172.

CBC did not explicitly request an annulment or other retroactive modification of the stay. It did, however, extensively argue that its actions should not be deemed a stay violation due to,

14

*inter alia*, Debtor's non-compliance with the most basic filing requirements and Debtor's tardiness in filing this Motion. [Supplemental Affirmation in Opposition, dkt item 36] This Court treats these arguments as a request for retroactive stay relief, and will analyze the same, *infra*.

Although granting retroactive relief from the stay undisputedly falls within the powers of a bankruptcy court, courts should use this power sparingly, and only under compelling circumstances. *In re Heating Oil Partners*, No. 3:08-CV-1976 (CSH), 2009 WL 5110838, at *10 n.28 (D. Conn. Dec. 17, 2009) (citing *Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 978 (1st Cir. 1997) and *In re Stockwell*, 262 B.R. 275, 281 (Bankr. D. Vt. 2001)). Courts look at a variety of factors in determining whether to annul a stay. *See, e.g.*, *In re WorldCom, Inc.*, 325 B.R. at 521-22 ("The relevant factors are: (1) if the creditor had actual or constructive knowledge of the bankruptcy filing and, therefore, of the stay, (2) if the debtor has acted in bad faith, (3) if there was equity in the property of the estate, (4) if the property was necessary for an effective reorganization, (5) if grounds for relief from the stay existed and a motion, if filed, would likely have been granted prior to the automatic stay violation, (6) if failure to grant retroactive relief would cause unnecessary expense to the creditor, and (7) if the creditor has detrimentally changed its position on the basis of the action taken." (citing *In re Stockwell*, 262 B.R. 275, 281 (Bankr. D. Vt. 2001))).

In *In re Olejnik*, this Court issued an order curing a stay violation *nunc pro tunc*, at least partially due to that debtor's non-compliance with his filing requirements and his failure to provide notice of the bankruptcy case to the foreclosing creditor. *See* Order Terminating the Automatic Stay, *In re Olejnik*, No. 09-76714-AST (Bankr. E.D.N.Y. Dec. 15, 2010), ECF dkt item 28. The circumstances in *Olejnik* were compelling, though. In *Olejnik*, the debtor did not

list the property that was later foreclosed in his bankruptcy filings and did not notify the mortgagee of the pendency of the bankruptcy case. In addition, *Olejnik* involved a transfer of the property from a third party to the debtor shortly prior to the debtor's filing for bankruptcy protection, and a partial transfer back to the original third-party owner upon dismissal of the bankruptcy case, with neither of the transfers being properly recorded, and without notification to the mortgagee.

Here, LP was undisputedly aware of the bankruptcy case and of the fact that Debtor was a defendant in the Foreclosure Judgment. Even though Debtor did not initially or subsequently comply with his filing requirements, and even if LP's allegations of an incomplete creditor list are indeed true, those facts alone are insufficient bases for justifying a retroactive curing of a knowing stay violation. The Court therefore declines to cure the stay violation. Similarly, LP's allegations that Debtor waited several months before moving to vacate the stay in order to enjoy free occupancy is unavailing when determining whether to cure a prior stay violation.[12] LP could have sought stay relief from this Court before conducting the Foreclosure Sale, yet it did not.

### *Actual and Punitive Damages*

Section 362(k)[13] of the Bankruptcy Code provides that subject to limited exceptions, "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1).

---

[12] Debtor's attorney responded, *inter alia*, that the reason for waiting was that he was unaware that the sale was not already vacated. [Response to Supplemental Affirmation in Opposition, dkt item 38 ¶¶ 10-12] The Court need not resolve this dispute, however, as retroactive stay relief will not be granted.

[13] The relevant provisions that are currently in Section 362(k) were previously in Section 362(h). For purposes of this Memorandum Opinion, this Court finds no reason to distinguish the two subsections and cites to precedent discussing Section 362(k) as well as the prior Section 362(h), interchangeably.

A deliberate action that violates the automatic stay, taken while the violator knew that the stay was in effect, justifies an award of actual damages, with no further showing necessary. *Cyrsen/Montenay Energy Co. v. Esselen Assocs., Inc. (In re Crysen/Montenay Energy Co.)*, 902 F.2d 1098, 1105 (2d Cir. 1990); *In re Robinson*, 228 B.R. 75, 80 n.5 (Bankr. E.D.N.Y. 1998). The action itself being deliberate suffices to constitute a willful violation of the stay, even if the fact that the action would violate the stay was unknown to the offender. *See In re Robinson*, 228 B.R. at 80 n.5; *In re Olejnik*, No. 09-76714-AST, 2010 WL 4366183, at *5 (Bankr. E.D.N.Y. Oct 28, 2010) (citing *In re Bresler*, 119 B.R. 400, 402 (Bankr. E.D.N.Y. 1990)).

In the present case, LP's knowledge of the pending bankruptcy case is undisputed. Even if LP believed it was not violating the stay, that fact does not insulate LP's actions from being a willful violation under Section 362(k)(1) of the Code. *See* 11 U.S.C. § 362(k)(1). That part of the Motion seeking actual damages is therefore granted.

Punitive damages, on the other hand, are only appropriate where the stay violation was conducted in bad faith, with malice, or in a particularly egregious manner. *In re Prusan*, No. 09-49716-CEC, 2010 WL 813778, at *3 (Bankr. E.D.N.Y. March 2, 2010); *Cyrsen/Montenay Energy Co. v. Esselen Assocs., Inc. (In re Crysen/Montenay Energy Co.)*, 902 F.2d at 1105 (noting variance among circuits on whether statute provides for punitive damages for a mere knowing violation, absent malice, and adopting view that maliciousness or bad faith is a necessary criterion for awarding punitive damages).

The Court finds that LP's actions did not involve any such aggravated circumstances that would justify granting punitive damages. Though LP did knowingly violate the stay, such violation was likely due to a mistake of law regarding a foreclosure of property in which Debtor had no ownership interest, thus not indicating bad faith or maliciousness. *Cf. Bank of Am., N.A.*

17

*v. Adomah* (*In re Adomah)*, 368 B.R. 134, 139 (S.D.N.Y. 2007) ("Moreover, even callous disregard is an insufficient basis upon which to award punitive damages because it does not rise to the level of bad faith or maliciousness." (citing *In re Layton*, 220 B.R. 508, 518 (Bankr. N.D.N.Y. 1998))). As indicated herein, the central issue in this case is one of first impression in this Circuit.

Finally, this Court has significant concerns about awarding punitive damages to this Debtor, who clearly filed this bankruptcy solely to prevent the Foreclosure Sale, with no legitimate intent to reorganize his financial affairs, to obtain a discharge, or to comply with his duties as a Chapter 13 debtor.

For the reasons set forth above, that part of the Motion seeking punitive damages is hereby denied.

## **Conclusion**

For the reasons set forth herein, the Motion is hereby granted in part and denied in part. To the extent the Motion seeks to deem the Foreclosure Sale of the Property a violation of the automatic stay, the Motion is granted. The Foreclosure Sale is therefore void. The Court also finds that LP is liable for actual damages that resulted from such violation. To the extent the Motion seeks punitive damages for said violation, the Motion is denied. The Movant shall have until April 29, 2011, to submit any further pleadings and affidavits in connection with establishing the amount of actual damages to be ordered. The Respondent shall have until May 13, 2011, to respond to such submissions. The Movant shall then have until May 27, 2011, to

rebut such submissions. Thereafter, the determination regarding actual damages shall be on submission before the Court. A separate order hereon shall issue.



**Dated: March 30, 2011**
**Central Islip, New York**

**Alan S. Trust**
**United States Bankruptcy Judge**